TONY HARRISON #97-A-1299
AUBURN CORRECTIONAL FACILITY
P.O. BOX 618
AUBURN, N.Y. 13201
JULY 13, 2011

CHAMBERS OF THE HONORABLE
MR. JACK B. WEINSTEIN
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
225 CADMAN PLAZA EAST
BROOKLYN, N.Y. 11201

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 18 2011 ★

BROOKLYN OFFICE

RE: <u>DOCKET NO. # CV-00-6830 (JBW)</u>

DEAR YOUR EXCELLENCY:

How are you Honorable Justice Mr. Weinstein? I am hoping you consider and carefully read the context of my reconsideration 60(B) motion. I really need to be produced in front of you, so I can present my motion properly in person. All I have is my mother and my wit in my struggles to show your court the injustices that was done to me, by the state courts.

I know you gave me a hearing in the beginning of 2008, but I was not in my right state of mind, and the lawyer you appointed me was more a advocate for the prosecution, than for me. I really need you to give me the right to be present in-order for me to actually show you that I was wrongfully convicted for crimes I did not do.

My mother still has faith in you, she still thinks you will do the right thing and give me a fair ruling of relief for her in my favor, but I don't know, because the prosecution and lawyers that suppose to safe-guard my constitutional rights, tends to always turns things around; like I be malingering in my battles for freedom, justice and equal pro-tection of the law. So again, I am requesting that you order to produce me directly, where I can show you my factual innocence in all my cases.

Very Truly Yours,

PETITIONER, TONY HARRISON,

CC:

UNITED STATES DISTRICT COURT OF NEW YORK
EASTERN DISTRICT OF NEW YORK
=======================================================

TONY HARRISON,
                    PETITIONER.

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUL 1 8 2011 ★

**BROOKLYN OFFICE**                    V.


DANIEL SENKOWSKI,
                    RESPONDENT.

=======================================================

------------------------------------------------------
REARGUE & RECONSIDER A RENEWAL FED.R.CIV.P. 60(B)
                PETITION/MOTION
------------------------------------------------------


RE: <u>DOCKET NO.# CV-00-6830(J.B.W.)</u>


_____


                              RESPECTFULLY SUBMITTED,
                              _Tony Harrison_          X
                              TONY HARRISON, PETITIONER
                              AUBURN CORR. FACILITY
                              P.O. BOX 618
                              AUBURN, N.Y. 13204

                    I.

## TABLE OF CASES

FEDERAL CASE AUTHORITY:

1. Menlendez-Diaz V. Massachusetts, 129 S.Ct. 2527
2. Ponter V. Texas, 338 U.S. 400
3. Crawford V. Washington, 541 U.S. 36
4. Barber V. Page, 390 U.S. 719
5. Lilly V. Virginia, 527 U.S. 116
6. White V. Illinois, 502 U.S. 364
7. Tennesse V. Street, 471 U.S. 409
8. Ohio V. Roberts, 448 U.S. 56
9. Parker V. Randoph, 442 U.S. 62
10. Chamber V. Mississippi, 410 U.S. 284
11. Dutton V. Evans, 400 U.S. 74
12. Mattox V. United States, 156 U.S. 237
13. Maryland V. Graig, 497 U.S. 836
14. Gonzalez V. Crosby, 125 S.Ct. 2641
15. Rodriquez V. Michell, 252 F.3d 191
16. Lonchar V. Thomas, 517 U.S. 314
17. Slack V. McDaniel, 529 U.S. 473
18. Whitley V. Senkowski, 317 F.3d 223


UNITED STATES CONSTITUIONAL PROVISIONS CITED:

ARTICLE III, SECTION 2

SIXTH AMENDMENT

FOURTEENTH AMENDMENT

III.

UNITED DTATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

TONY HARRISON,

                    PETITIONER,                NOTICE OF MOTION TO: <u>RE-ARGUE & RECONSIDER A RE-NEWAL VACATE THE JUDGE-MENT, PURSUANT TO: FED. R. CIV. P. 60 (B),(6)</u>....

       V.

DANIEL SENKOWSKI,                DOCKET NO.# <u>CV-00-6830 (JBW)</u>

               RESPONDENT.
------------------------------------------------X

YOUR EXCELLENCY:

Please take notice, that upon the annexed affidavit of Tony Harrison being duly sworn to this _12th_ day of _July_ ,2011, and along with the supporting exhibits as proof of evidence, and a memorandum of law in support of motion; including herein, and made a part hereto proceedings herefore.

Motion to reargue and reconsideration of prior vacated the judgement 60(B) motion, that was denied in part and transferred in part, by Jack B. Weinstein, Senior District Judge, on January 22, 2008. This motion will we made to County Of Kings, United States District Court, Eastern District Courthouse, located at 225 Cadman Plaza East, Brooklyn, N.Y. 11201, on the _16th_ day of _September_,2011 at 10:00 am or as soon thereafter as Petitioner can be heard, for "<u>ORDER</u>", PURSUANT TO: FED. R. CIV. P. 60(B),(6), and also for an "<u>ORDER</u>" GRANTING HEARING UNDER "<u>EXTRA-ORDINARY CIRCUM-STANCES</u>".......

1.

CONT. <u>NOTICE OF MOTION</u>

Petitioner's reargue & reconsideration and renewed Fed. R. Civ. P. 60(B) motion specifics are as follows: The state court misapprehension, and how the state court "<u>OVERLOOKED</u>" how the new ruling of the reaffirmation and extension of Crawford applied directly to Petitioner's case; by not allowing Petitioner to confront the original N.Y.P.D. chemist, who did the actual serology of laying a foundation down for genetic material; for D.N.A. testing that link Petitioner to a crime, SEE: <u>Melendez-Diaz V. Massachusetts, 129 S.CT. 2527 (U.S. 2009)</u>.

DATED: 7 / 12 / 11

RESPECTFULLY SUBMITTED,

_Tony Harrison_ X
<u>PETITIONER, TONY HARRISON</u>

TO: DISTRICT ATTORNEY'S OFFICE
    RENAISSANCE PLAZA
    350 JAY STREET
    BROOKLYN, N.Y. 11201

2.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x

TONY HARRISON,

               PETITIONER,

AFFIDAVIT IN SUPPORT OF:
REARGUE & RECONSIDER A
RENEWAL VACATE THE JUDGE-
MENT, PURSUANT TO: FED. R.
CIV. P. 60(B),(6)......

        V.

DANIEL SENKOWSKI,

               RESPONDENT.

DOCKET NO.# CV-00-6830(JBW)

-------------------------------------------------X
STATE OF NEW YORK)
             SS:
COUNTY OF CAYUGA)

I, Tony Harrison, being duly sworn, deposes and says:

1. That I am the undersigned in the action listed above and make the af-
fidavit in support of my instant motion to support to this Court, the
United States District Court, Eastern District Of New York; a pro se
motion to reargue & reconsider a renewal vacate the judgement, pursuant
to: FEDERAL RULES & CIVIL PROCEDURE 60 (B),(6)...

2. The question now arises whether there is EXTRA ORDINARY CIRCUMSTANCES
that authorizes this court to vacate the judgement based on the original
analyst evidence of New York City Police Department laboratory that was
exhibited under oath as Sonia Basiles; was subjected to confrontation
under the substance and the core of the SIXTH AMENDMENT, because thirteen
years later on January 22, 2008, prosecution presented new light that
now the name of original chemist was Samia Basilious, also they stated,
that it was now phonetic spelling that changed first and last name; but
the original trial records does not support this alleged phonetic spelling.

3.

CONT. <u>AFFIDAVIT IN SUPPORT</u>

3. The central question presented before this court is whether the decision on January 22, 2008, that resulted in denied in part and transferred in part be re-opened pursuant to: THE NEW RULING OF <u>MELENDEZ-DIAZ V. MASSACHETTS</u>, which establishes the importance of Petitioner having the right to confront the original chemist, who did the actual serology of laying a foundation down for genetic material, for D.N.A. testing that link Petitioner to a crime.

4. This case involves a clear deprivation of the VI and XIV amendments to United States constitution; which provides in pertinent in part as follows:

<u>SIXTH AMENDMENT</u>

In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and District wherein the crime shall have been, committed, which District shall have been, previously ascertained by law and to be, inform of the nature and cause of the accusation; to be compulsory process for obtaining witnesses in his favor, and to have the assisatnce for his defense.

<u>FOURTEENTH AMENDMENT</u>

SECTION 1: all persons born or naturalization in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the States wherein they reside. No state shall make or enforce an law which shall abridge the privileges or immunities of citizens of the United States. Nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any persons withih jurisdiction the equal protection of the law.

SECTION 5: The Congress shal have power to enforce by appropriate legislation, the provision of this Article.

4.

CONT. AFFIDAVIT IN SUPPORT

5. For alleged acts against Shirley Carel on June 23, 1995, 1995, Petitioner was charged on October 6, 1995, under Kings County Indictment 12017/95, with rape in the first degree, sodomy in the first degree, three counts of sexual abuse in the first degree, menacing in the second degree and unlawful imprisonment in the first degree. The Indictment also charged harassment in the first degree; arising out the aborted incident on the day of Petitioner's arrest on September 16, 1995.

6. For alleged acts against Sonia Allin on March 4, 1995, Petitioner was also charged on June 10, 1996, under Indictment 7629/96, with rape in the first degree, two counts of sodomy in the first degree three counts of sexual abuse in the forst degree, burglary in the first degree and menacing in the second degree.

7. The above two Indictments were consolidated under Kings County Indictment 12017/95; by order of trial judge Anne G. Feldman, dated: July 23, 1996.

8. On February 7, 1997, after a jury trial, Petitioner was convicted of two counts of rape in the first degree, two counts of sodomy in first degree; and harassment in the first degree; and sentenced as a madatory persistent violent felony offender to four consecutive terms of twenty-five years to life imprisonment.

9. The Petitioner appealed from his judegment of conviction to the New York State Supreme Court, Appellate Division, Second. The Appellate Division unanimously affirmed Petitioner's conviction on November

5.

CONT. <u>AFFIDAVIT IN SUPPORT</u>

CONT. <u>BACKGROUND FACTS AND PROCEDURAL HISTORY</u>

2, 1998; Leave to appeal to the Court Of Appeals was denied on February 17, 1999.

10. On January 8, 2000, the Petitioner filed a motion pursuant to C.P.L. 440.10 to vacate the judgement of wrongful conviction. On March 13, 2000, the Petitioner's motion was denied. On or about August 23, 2000, leave to appeal from the denial of Petitioner's C.P.L. 440.10 motion was denied.

11. On October 30, 2000, the Petitioner filed a pro-se petition for writ of habeas corpus before the United States District Court, Eastern District Of New York. On May 10, 2001, the District Court denied Petitioner's petition and denied a certificate of appealability. On January 28, 2003, the United States Court Of Appeals for the Second Circuit denied Petitioner's pro se motion for a certificate of appealability.

12. On May 16, 2003, Petitioner filed a motion to set aside his sentence pursuant to C.P.L. 440.20. On July 17, 2003, the Petitioner motion was denied.

13. Petitioner filed an application for writ of coram nobis. This application was denied on April 9, 2004. Leave to appeal Petitioner's writ of coram nobis application was denied by the Court Of Appeals on July 14, 2004.

14. In August of 2003, Petitioner filed and request under freedom of information law, to pursue copies of alleged lab reports and analysis

6.

CONT <u>AFFIDAVIT IN SUPPORT</u>

CONT. <u>BACKGROUND FACTS AND PROCEDURAL HISTORY</u>

report done by the original chemist named on the record as Sonia Basiles; and that was exhibited as exhibit (8) at Petitioner's trial. When the request was denied by the District Attorney's Office, Petitioner commenced a petition to Brooklyn Civic Court under Article 78 application.

15. On March 16, 2004, and On June 23, 2005, The Honorable Laura Jacobson ordered the District Attorney's office twice to identify lab report and analysis report done by original chemist name on the record as Sonia Basiles.

16. On August 15, 2005, the District Attorney's office responded with a letter to Judge Laura Jacobson stating, "that the chemist Sonia Basiles did not complete any lab reports relating to Petitioner's criminal case.

17. On March 7, 2006, the Petitioner filed a second C.P.L. 440.10 motion under newly discovered evidence, that the forensic evidence was flawed and that the prosecutor had misrepresented who had original analyzed the serology of the rape kit. On May 17, 2006, the Petitioner's motion was ]
was denied, and leave to appeal to the Appellate Division, Second Department was denied on August 9, 2006.

18. On October 16, 2006, the Petitioner filed an application to the Second Circuit Court for permission file a successive Habeas Corpus petition, based on and was support by newly discovered evidence. The Second Circuit, on November 16, 2006 denied Petitioner's permission to file a successive habeas corpus petition.

7.

CONT. <u>AFFIDAVIT IN SUPPORT</u>

CONT. <u>BACKGROUND FACTS AND PROCEDURAL HISTORY</u>

19. On July 23, 2007, the Petitioner moved pursuant to rule 60(b) of Federal rules Of Civil procedure, to vacate the District Court's denial of his petition for a habeas corpus. Counsel for that rule 60(B),(6) motion was appointed, and hearing was held on January 9, 2008 and on January 22, 2008 the motion was denied to the extent and transferred to the Second Circuit Court under factual innocence. On February 18, 2009 the Petitioner's transfer to the Second Circuit was dismissed without Petitioner's knowing.

20. On September 16, 2008, the Petitioner filed and consolidated renewal and reargument motion, to vacate the judgement and to vacate the sentence. On April 22, 2009, Both renewal motions were denied, and leave to appeal to Appellate Division, Second Department was denied on October 1, 2009.

21. On October 27, 2009, Petritioner filed another renewal motion based on the new ruling that reaffirmed and extended <u>Crawford V. Washington</u>, with United States Supreme Court ruling <u>Melendez-Diaz V. Massachusetts</u>, 129 S.CT. 2527 (2009). On December 16, 2009, the People filed an answer in opposition. Petitioner filed a futher response on January 4, 2010. This renewal motion was denied on February 26, 2010, by Justice James P. Sullivan.

22. On March 12, 2010, Petitioner filed another renewal and reargue motion based on the claim that the lower court "<u>OVERLOOKED</u>," how this new ruling of the reaffirmation and the extension of CRAWFORD, applies diectly to the Petitioner's case. This motion has been pending for over one year.

8.

CONT. <u>AFFIDAVIT IN SUPPORT</u>

<u>STATEMENT OF FACTS</u>

<u>CASE SUMMARY OF HEARSAY TRIAL TESTIMONY OF MARY QUIGG</u>

23. On January 16, 1997, at Petitioner's trial Mary Quigg testified for the People as a supervisor of serology, and she was employed by the New York City Police Department laboratory, for 12 years, as a chemist, SEE: <u>T. pg. 207.</u>

24. At Petitioner's trial, she testified that she received a sealed envelope, that was a big plastic bag, which contained four paper bags under voucher no.# F-822734. She also testified that she received a sealed sexual evidence kit under voucher no.# F-822735; and she stated, "that she believed there was a condom inside, SEE: <u>T. pg. 211-212.</u>

25. Mary Quigg goes on to agreeing that a condom being in sexual evidence kit, and she states, "it was tested for the presence of spermatazoa", and she states, "it was put back in it's original package", SEE: <u>T. pg. 214.</u>

26. Mary Quigg testifies to opening the sexual evidence kit to remove condom a year later, (March 20, 1996, from the date of March 4, 1995), she states, "she took the entire condom out of sexual evidence kit, (that was supposedly have been stored in a freezer, in a facility for the police department); and then she states, "she placed in a serology lab.

27. Mary Quigg continues to testify and states, "that the shirt from bag number three was tested or observed for stains", and also states, "there was three stains, and one of the stains was cut out and tested positive for the presence of spermatozoa, and she goes on to say, "that

9.

CONT. <u>AFFIDAVIT IN SUPPORT</u>

CONT. <u>STATEMENT OF FACTS</u>

CONT. <u>CASE SUMMARY OF HEARSAY TRIAL TESTIMONY OF MARY QUIGG.</u>.

she found several stains and took cuttings of each stain, there was four yellowish stains and three of the stains was positive for spermatozoa, and each cutting was put in a separate envelope, SEE: <u>T. pg. 212 to 220.</u>

28. Mary Quigg goes further in her testimony on re-direct examination stating, "that she is not the original serologist or chemist in testing of this rape kit and condom, SEE: <u>T. pg. 235-236.</u>

<u>RE-DIRECT EXAMINATION:</u>

Q. MISS QUIGG, CAN YOU TELL US WHO ANALYZED THE RAPE KIT AND THE CONDOM?

A. A CHEMIST BY THE NAME OF SONIA BASILES.

Q. DOES THAT PERSON STILL WORK FOR THE NEW YORK CITY POLICE DEPARTMENT?

A. NO.

Q. WERE YOU HER DIRECT SUPERVISOR?

A. YES.

Q. DID YOU OVERSEE HER WORK?

A. YES.

Q. DID YOU CHECK HER REPORTS?

A. YES.

Q. DO YOU HAVE THE REPORTS HERE THAT SHE PREPARED WITH REGARDS TO THE RAPE KIT CONDOM?

A. YES.

10.

CONT <u>AFFIDAVIT IN SUPPORT</u>

CONT. <u>STATEMENT OF FACTS</u>

CONT. <u>CASE SUMMARY OF HEARSAY TESTIMONY OF MARY QUIGG.</u>

Q. WAS THAT REPORT MADE IN THE ORDINARY COURSE OF BUSINESS OF THE POLICE
LABORATORY?

A. YES.

Q. IS IT THE BUSINESS OF LAB TO PREPARE THOSE REPORTS AFTER DOING CER-
TAIN TESTS?

A. YES.

Q. IS ONE OF THE DUTIES OF A CHEMIST OF A SEROLOGIST TO DO TESTS AND
PREPARE THAT REPORTS?

A. YES.

MS. SLATER: I ASK THAT BE MOVED INTO EVIDENCE AS PEOPLE'S EXHIBIT
EIGHT.

MR. CLARKE: WHERE IS THE EXHIBIT?

THE COURT: SHOW IT TO HIM, PLEASE.

MS. SLATER: HE HAS A COPY.

MR. CLARKE: I WANT TO SEE THE PIECE OF PAPER.

MS. SLATER: SURELY.

29. Then Mary Quigg goes on further in testimony in the defense re-cross
examination, talking about the employess she supervised, but could not
give a accurate finding in testing, SEE: <u>T. pg. 238.</u>

Q. YOU TALK ABOUT ONE OF THE EMPLOYEES YOU SUPERVISED TESTING THE CONDOM
FOR SPERM AND FINDING IT POSITIVE THAT THERE WAS SPERM WITH THE CONDOM,
RIGHT?

A. YES.

Q. WHERE WAS THE SPERM?

A. I HAVE NO IDEA.

11.

MEMORANDUM OF LAW TO NEW RULING OF THE
REAFFIRMATION AND EXTENSION TO THE CON-
FRONTATION CLAUSE, U.S. CONST. AMEND. VI...

30. The sixth amendment provides, in pertinent part, that, "in all criminal prosecutions the accused shall enjoy the fundamental right to be confronted with the witnesses against him", SEE: U.S. CONST. AMEND. VI. The Supreme Court has held that this constitutional protection applies to both federal and state prosecution, SEE: Pointer V. Texas, 338 U.S. 400,406 (1965).

31. The admission of hearsay evidence against a criminal defendant implicates the the sixth amendment, because the defendant is not afforded the opportunity to confront the out-of-court declarant, SEE: Crawford V. Washington, 541 U.S. 36 (2004). Therefore, - before hearsay testimony may-be elicit against a defendant, the prosecution must prove the unavailability of the witness, (Crawford V. Washington, supra. Barber V. Page, 390 U.S. 719,722-25 (1968), and that the defendant had aprior opportunity to cross-examination the witness (Crawford V. Washington, supra. Lilly V. Virginia, 527 U.S. 116 (1999).

32. The Supreme Court extended the reach of the confrontation clause in Melendez-Diaz V. Commonwealth Of Massachusetts, 129 S.CT. 2527. Melendez-Diaz is a reaffirmation and extension of Crawford V. Washington, the land mark 2004 decision concerning the admissibility of hearsay testimony at trials. Melendez-Diaz directly reject the admissibility of a single type of evidence, such as: certified laboratory report, and etc... Ultimately Melendez-Diaz call into question the procedure by which prosecutors lay a foundation for admission of evidence under the ordinary course of business record via affidavits as well.

12.

CONT. MEMORANDUM OF LAW TO NEW RULING OF THE
REAFFIRMATION AND EXTENSION TO THE CON-
FRONTATION CLAUSE, U.S. CONST. AMEND. VI...

33. In Melendez-Diaz ruling establishes that forensic evidence is not
uniquely immune from risk of maipulation, also according to recent
studies conducted under auspices of the National Academy of Science,
"The majority of laboratories producing forensic evidence are admini-
strated by law enforcement agencies, such as police departments where
the laboratory administrator reports to the head of the agency", This
ruling also strengthens the confrontation and it is designed to weed out
not only the fraudulent analyst; but the incompetent one as well.....
Serious deficiencies have been been found in the hearsay testimony in
introducing a serology report used in Petitioner's trial. Mary Quigg was
allowed to testify to a copy of a piece of paper with another chemist
name on it, and thirteen years later the name that Mary Quigg testified
[SONIA BASILES], too, is now claim by the prosecution to be phonetic
spelled to a different first and last name. This piece fo paper was not
even sworn to by anyone; but this piece of paper was still exhibit as evi-
dence EXHIBIT EIGHT(8), and supposedly laying the foundation down for se-
rology in genetic material in-order to get some D.N.A.. Then Mary Quigg was
allowed to testify to this piece of paper when she had no idea whehter
sperm existed in or out of condom, SEE:EXHIBIT-(A), (B) ATTACHED TO THIS
MOTION.

34. The prosecution failed to present suficient reasonable assurance that
this evidence was in an unchanged condition, and the prosecution did not
provide any reasonable assurance of identity of that sexual evidence kit
box. But prosecution was allowed to introduce hearsay testimony of Mary

13.

CONT. <u>MEMORANDUM OF LAW TO THE RULING OF THE</u>
<u>REAFFIRMATION AND EXTENSION TO THE CON-</u>
<u>FRONTATION CLAUSE, U.S. CONST. AMEND. VI...</u>

Quigg testifying too, "that she took a condom out of this sexual evidence kit box, a year later, and placing it back in box at a serology lab.

35. The prosecutor never established day by day location of forensic evidence with the laboratory, such as: where this forensic evidence came from, who kept it stored, who handled it. So Petitioner was entitled to confront these witnesses in establishing it's chain of custody. It also was necessary to call the original chemist from the serology lab, who did the actual testing of this sexual evidence kit with alleged condom inside; that was introduced as developing genetic material in producing D.N.A. to identify a suspect.

36. Proper procedures were not followed, just the willingness of a supervising serologist Mary Quigg; who cut corners to back the prosecutor's data of there hypothesis of Petitioner's guilt. This serology report of forensic evidence was testified to by Mary Quigg in-order to Indict the Petitioner, and it was consolidated to another Indictment which had no forensic evidence; so it was definitely accusatory in nature, wherefore, testimony was required from the actual tester; especially at Petitioner's trial.

37. So the Court's decision to admit People Exhibit eight(8) as evidence of serology of genetic material, through hearsay testimony of Mary Quigg, as an ordinary course of business record, was extreme error; because the copy of this document was testimonial and triggered the right to confrontation, where this document was definitely prepared for law enforcement for the purpose of prosecution.

14.

CONT. MEMORANDUM OF LAW OF NEW RULING TO THE
REAFFIRMATION AND EXTENSION TO THE CON-
FRONTATION CLAUSE, U.S. CONST. AMEN. VI...

38. These courts must stop overlooking the fact that this exposure to law enforcement officials and facts surrounding a particularly henious crime may subtly prejudice the laboratory technicians' work and subsequently analysis of test results. For example: Like Petitioner tried to point out in prior motion of ineffective assistance of trial counsel, not pursuing the original chemist on this unsworn serology report, and allowed this serology report tobeexhibited as exhibit eight(8); without objection; and ironically thirteen years later this same unsworn serrology report had a different <u>first</u> and <u>last</u> name on it, that was different than what supervising chemist Mary Quigg testified too at trial. So this is more than enough proof that when a technician is aware that crime suspect and source of the alleged genetic material sample is believed to be RESPONSIBLE : for a number of gruesome rapes and sodomy; will do anything to help the prosecution case.

39. This is why on June 25, 2009, a divided Supreme Court of the land extended the reach of the confrontation clause, because forensic scientist often are driven in their work by need to answer a particular question related to the issues of particular case, they sometimes face pressure to sacrifice appropriate methodology for the sake of expediency. A forensic analyst responding to a request from a law enforcement official of the arm of the court may feel pressure to have an incentive to alter the evidence in matter favorable to the prosecution, SEE: <u>Melendez-Diaz V. Massachusetts, 129 S.CT. 2537, NO.# 07-591, pg. 10</u>....

15.

CONT. MEMORANDUM OF LAW OF NEW RULING TO THE
REAFFIRMATION AND EXTENSION TO THE CON-
FRONTATION CLAUSE, U.S. CONST. AMEND. VI...

Like also for example: <u>The testimony of supervising chemist Mary</u>
<u>Quigg, the copy of this unsworn serology report served as substantive</u>
<u>evidence against the Petitioner; where identity depended on the existence</u>
<u>of genetic material; whereas, this hearsay testimony by Mary Quigg showed</u>
<u>she did not make any analysis of the alleged condon inside the sexual ev-</u>
<u>idence kit.</u>SEE: TRIAL MINUTES EXHIBITED IN MOTION AS EXHIBIT (B)...

40. As supreme Court stated in <u>Crawford</u>: "Most of the hearsay exceptions
covered statements that by their nature were not testimonial, for example:
business records of statements in furhter of a conspiracy", <u>541 U.S. at 56.</u>
Busisness and public records are generally admissible adsent confrontation
not because they qualify under an exception to the hearsay rules, but be-
cause having been created for administration of an entity affairs, and
not for the purpose of establishing or proving some fact at trial--they
are not testimonial. Whether or not they qualify as business or official
records, the analysts' notes, records and statement here were prepared
specifically for use at Petitioner's trial--were testimony against Peti-
tioner, and the original analyst was subjected to confrontation under
the <u>SIXTH</u> <u>AMENDMENT.</u>

41. The Supreme Court of the land has repeatedly and without deviation
held that the purpose of the confrontation clause is to promote accuracy,
SEE: e.g., <u>Crawford, 124 S.CT. at 1370 ("This open examination of witnesses</u>
<u>is much more conducive to the clearing up of truth").(quoting 3 Blackstone,</u>
<u>Commentaries 373; White V. Illinios, 502 U.S. 346,355, 122 S.CT. 736, 116</u>
<u>L.Ed.2d 848...(1992)</u>(evaluating a confrontation clause claim against the

16.

CONT. MEMORANDUM OF LAW OF NEW RULING TO THE REAFFIRMATION AND EXTENSION TO THE CON-FRONTATION CLAUSE, U.S. CONST. AMEND. VI...

benchmark of accuracy); Tennessee V. Street, 471 U.S. 409, 415, 105 S.CT. 2078...(1985)(describing the confrontation clause very mission as "to advance the accuracy of the truth-determining process in criminal trials") (quoting omitted); Ohio V. Roberts, 448 U.S. 56,65..(1980)(stating the purpose of the confrontation clause is to "argument accuracy in the fact-finding process"); Parker V. Randoph, 442 U.S. 62,73..(1979)(plurality), ("The right of confrontation conferred by the sixth amendment is a safe-guard to ensure the fairness and accuracy of criminal trials"); Chamber V. Mississippi, 410 U.S. 284...(1973)("The right of cross-examination is more than a describe rule of trial procedure, it is implicit in the constitu-tion right of confrontation, and helps assure the accuracy of truth-de-termining process".); Dutton V. Evans, 400 U.S. 74...(1970)("Probably certainly experienced in trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case"), Mattox V. United States, 156 U.S. 237,242-43.(1895) (describing the "primary object" of the confrontation clause as to "to prevent depositions or ex parte affidavits....being used against the pri-soner in lieu of a personal examination and cross-examination of the wit-ness, in which the accused has an opportunity, not only of testing the recollecting and sifting the conscience of the witness, but of compelling him to stand face with jury in-order for them to look at him, and judge his or her demeanor upon the stand, and the manner in which he or her gives his or her testimony; whether they is worthy of belief"), SEE ASLO: M. Hale, History and Analysis of the Common law Of England 258 (1713).... (adversarial testing "beats and bolts out the truth much better")..

17.

CONT. <u>MEMORANDUM OF LAW OF NEW RULING TO THE</u>
<u>REAFFIRMATION AND EXTENSION TO THE CON-</u>
<u>FRONTATION CLAUSE, U.S. CONST. AMEND.VI</u>...

42. The central question concerns of the constitution clause is to ensure
the reliability of the evidence against a criminal defendant by subjecting
it to rigorous testing in the context of an adversary proceeding before
the trier of fact. The word confront, after all, also means a clashing of
forces or ideas, thus carrying with it the notion of adversariness, SEE:
<u>Maryland V. Graig, 497 U.S. 836,845</u>...(1990)(The combined effect of these
elements of confrontation--physical presence, oath,cross-examination, and
observation of demeanor by the trier of fact--serves the purpose of the
confrontation clause by ensuring that evidence admitted against is reli-
able and subjected to the rigorous adversarial testing that is the norm
of Anglo-American criminal proceedings"),Id. at <u>846</u>.

43. As Supreme Court Justice Scalia thoroughly notes, the confrontation
clause demands that the reliability of a statement be determined via
confronation, and not by any independent judicial determination, SEE:
<u>Crawford, 541 U.S. at 63</u>. The Confrontation Clause "commands", not that
the evidence be reliable, but the reliability be assesses in a particular
manner, by testing in the crucial of cross-examination. The Clause, thus
reflects a judgement, not only about the desirability of reliable evidence
(a point on which there could be little dissent), but about how reli-
ability can best be determined. Id. at <u>847</u>. Any determination, by any
Court, that's in compliance with the confronation clause requirement
fails to go the accuracy of the criminal proceedings, is therefore, a
direct contracdiction of the clause itself and has a unreasonable inter-
pretation of the constitution of the state and the United States...

18.

MEMORANDUM OF LAW OF
FED.R.CIV. P. 60 (B)

44. The United States Supreme Court,and the Court Of Appeals for the Second Circuit had adopted the equally seeping view. The a rule 60(B) motion to vacate the judgement denying habeas corpus relief, should never be construed as a successive habeas petition; and "the fact that the court to which the motion is addressed might conceiveably go further and grant the habeas in response to the rule 60(b) motion does not.... make such a motion a second habeas petition",SEE: Gonzalez V. Crosby, 125 S.CT. 2641 & Rodriquez V. Mitchell, 252 F.3d 191,199.

45. In Gonzalez, the Supreme Court of United States, ruled that, rule 60(B) of the Federal Rules Of Civil Procedures, allows a party, including a habeas Peitioner, to seek relief from a final judgement, and request re-opening of his case on ashowing of inter alia, fraud, mistake, and newly discovered evidence.

46. To rely on rule 60(B) relief, a Petitioner must "show EXTRA-ORDINARY CIRCUMSTANCES", justifying the re-opening of a final judgement". Id. at 125 S.CT. at 2651. The Supreme Court has cautioned, "such circumstances rarely occur in the habeas context", Id. at 125 S.CT. at 264.

46. Petitioner asserts multiple legal bases for relief as well as a constitutional challenge to sec. 2244. The latter challenges is to the extent that this section bars the relief sought here, sec. 244 is an unconstitutional restrian on the exercise of the court's inherent power under Article III, section 2 of the Constitution.

47. Petitioner's legal contenton, that this court should address first is, the applicability of rule 60(B), and the supporting facts in Gonzalez.

19.

CONT. MEMORANDUM OF LAW OF
FED. R. CIV. P. 60(B)

In Gonzalez, the Supreme Court addressed the availability of equitable relief under federal rules of civ. procedure 60(B) in habeas action. 48. In essence, Gonzalez, concludes, that "rule 60(B), like the rest of civil procedures, applies in habeas corpus proceedings under 28 U.S.C. section 2254, only to the extent that it is not inconsistent with app-licable federal statutory provisions and rules, 125 S.CT. at 2646 (foot-note Omitted). Moreover, "AEDPA did not expressly circumscribe the op-eration of rule 60(B)" Id.

49. Petitioner's contention   is, firmly grounded in the dismissal of a first federal habeas petition, aparticularly serious matter in that the dismissal denies the Petitioner the protection of the Great Writ entirely risking injury to an important interest in human liberty, SEE: Lonchar V. Thomas, 517 U.S. 314, SEE: ALSO, Slack V. McDaniel, 529 U.S. 473("The Writ of habeas corpus plays a vital role on protecting constitutional rights"). When a habeas petition has been, dismissed on a clearly defective proce-dural ground, the state can hardly claim a legitimate interest in the fi-nality of that judgement.

50. This court upon reviewing the transcripts of the hearing held on June 9, 2008, Petitioner requested assigned counsel; had raised additional claims in the oral via phone argument; including a claim of actual in-nocence, SEE:(TRANSCRIPTS OF HEARING DATED: JUNE 22, 2008)

51. This court should conclude that Petitioner's motion qualifies under Gonzalez as non-claim motion. First, the Petitioner asserts in this motion a REQUEST for an evidentiary hearing that state court prematurely

20.

CONT. MEMORANDUM OF LAW OF
FED. R. CIV. P. 60(B)

denies him. After review of Petitioner' presented motion, the AFFI-
DAVIT IN SUPPORT, BACKGROUND & PROCEDURAL HISTORY, CASE SUMMARY OF
MARY QUIGG'S HEARSAY TESTIMONY AT PETITIONER'S TRIAL AND DOCUMENTARY
PROOF AS EXHIBITED ATTACHED TO MOTION; will show the District Court,
that the proffered evidence satifies the requis; it's statutory criteria
of NEW RULING IN MELENDEZ-DIAZ, and it will show Petitioner is entitled
to vacatur of the judgement.

51. The new profound motion of 60(B) will show that Supervising chemist
Mart Quigg's testiminy was merely hearsay, and the motion will show that
original chemist testimony was needed and without it escalated it into
prosecutional misconduct. In light of the counselor's inadequate perform-
ance and failure to investigate into the recently disclosed information
that cast new light on Mary Quigg's hearsay testimony and extra-ordinary
new light on the People's evidence exhibited as eight(8); that there were
no testimony by the named chemist on the record SONIA BASILES, or no test-
imony thirteen years later by alleged phonetic spelled name SAMIA BASIL-
IOUS.....

52. The Petitioner is also addressing in his argument that the state
court committed  error in failing to review his claim of reaffirmation &
extension of Crawford; whereas, that Petitioner continues to show supp-
orting facts his CONFRONTATION CLAUSE CLAIM, in hope that this court
will grant the motion and re-open his habeas corpus proceedings under the
decision employed by the Second Circuit in Whitley V. Senkowski, 317 F.3d
223.

53. Petitioner continues to stress the argument that the state court

CONT. MEMORANDUM OF LAW OF
FED. R. CIV. P. 60(B)

failed to grant the Petitioner's "fair hearing" once reviewing the
recent renewal & reargue C.P.L. 440.10 motion; still now pending for
over a year in lower state courts....Under the history of this case,
indisputably, the new ruling under Melendez-Diaz is unquestionablly
material to the issues at trial; which revolved around testimony  and
a alleged lab results relevant to the foundation of serology tests per-
formed on alleged condom alegedly obtained at the crime scene; which
included as People's evidence and exhibited as exhibit eight(8) at Pe-
tioner's trial.

    WHEREFORE, Petitioner respectfully request that this Court Vacate
The Judgement herein and order the renew or re-consideration of Petition
er's 60(B) motion, pursuant to the New Ruling of the United States Su-
preme Court; or as a alternative order an "ORDER TO PRODUCE" the Peti-
tioner, so he can argue the facts hereof and herein; together with such
other and further relief as the District Court may deem just and proper
in the interest of justice and as a matter of law, under the "THE RULING
SET FORTH IN MELENDEZ-DIAZ V. MASSACHUSETTS, 129 S.CT. 2527 (U.S.2009)...

SWORN TO BEFORE ME ON THIS

12⁽ᵗʰ⁾ DAY OF July ,201(

_David G. O'Hara_

**DAVID G. O'HARA**
Notary Public, State of New York
No. 01OH6233984
Qualified in Onondaga County
Commission Expires January 3, 2012

RESPECTFULLY SUBMITTED,

_Tony Harrison_ X
PETITIONER TONY HARRISON

22.